[No. F013783. Fifth Dist. June 25, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMIRO GUERRA MADERA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication as to the section designated "Introduction" and issue III only.

## COUNSEL

Manuel E. Nestle, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Shirley A. Nelson and Stan Cross, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARDAIZ, Acting P. J.—**

### INTRODUCTION

Ramiro Guerra Madera stands convicted of two counts of burglary (Pen. Code, § 460, subd. 1),[1] five counts of lewd and lascivious acts with a child under the age of fourteen (§ 288, subd. (a)), two counts of oral copulation (§ 288a, subd. (c)) and three counts of sodomy (§ 286, subd. (c)). The convictions stem from conduct involving Madera and several minor males between September of 1987 and November of 1989. Madera was sentenced to state prison for a total fixed term of 23 years.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

### I., II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.

*Did the Trial Court Violate Section 654 by Punishing Madera for "Undefined Lewd Acts" Underlying the Convictions in Counts XI and XIV?*

THE ISSUE

Eleven-year-old Josh W. testified to three separate incidents or specific time periods in which Madera engaged in one or more of the following types of conduct: touching or rubbing Josh's penis, engaging Josh in oral copulation with him, and sodomizing Josh. As to the last incident (between Oct. 23, 1989, and Oct. 27, 1989), the jury convicted Madera of a lewd and lascivious act (count VIII) but acquitted him of oral copulation and sodomy (counts IX and X, respectively). As to the other two incidents or series of incidents (between Sept. 1, 1988, and Sept. 15, 1989, and between Sept. 1, 1987, and June 15, 1988), the jury convicted him of—and the court imposed consecutive sentences on—all three counts (counts XI through XVI). ▮▮▮ Madera now contends that section 654 precludes separate punishment on the lewd and lascivious convictions in counts XI and XIV.

Madera reasons that Josh "described a continuing course of conduct in which the appellant proceeded from touching or rubbing his penis to oral copulation and sodomy. . . . In such a case, the touching is merely incidental and preparatory to the commission of the defined sexual crimes [oral copulation and sodomy] and must be viewed as part and parcel of those crimes, . . ." Respondent counters that "[a]lthough a touching of a victim's body in the course of removing a victim's underwear properly could be considered necessary or incidental to an act of oral copulation or sodomy, appellant's acts of placing his hand on Josh's penis or rubbing Josh's penis were not acts that were either necessary or incidental to oral copulation or sodomy. . . ."

THE STATUTE

Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under

---

*See footnote, *ante*, page 845.

either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

■ As noted by the Supreme Court in *People* v. *Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078]:

"It is well settled that section 654 protects against multiple punishment, not multiple conviction. [Citation.] The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' [Citation.] However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]

"It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]

"If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.] . . ."

APPLICATION TO SEX CRIMES

In *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], the defendant committed rape, sodomy, and two oral copulations during a continuous 45- to 60-minute attack. (*Id.* at p. 549.) The trial court stayed execution of sentence on the oral copulation and sodomy convictions. The Supreme Court reversed: "None of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other. We therefore conclude that section 654 does not preclude punishment for each of the sex offenses committed by defendant." (*Id.* at pp. 553-554.)

The trial court in *Perez* found the stayed crimes were committed pursuant to the same intent and objective as the rape, i.e., to obtain sexual gratification. The Supreme Court rejected this rationale:

"Such an intent and objective is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts. To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. [Citation.] It would reward the defendant who has the greater criminal ambition with a lesser punishment. [Citation.]

"A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act. We therefore decline to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act. [Citations.]" (*People* v. *Perez, supra,* 23 Cal.3d at pp. 552-553.)

In *People* v. *Harrison, supra,* 48 Cal.3d 321, the defendant forcibly inserted his finger into the victim's vagina three times, with each insertion lasting only a few seconds and the entire incident lasting only a few minutes. (*Id.* at pp. 325-326.) The Supreme Court held that "each of the digital penetrations committed in the course of defendant's assault upon Virginia N., and highlighted by intervening acts of force, constituted a separate violation of section 289, subdivision (a). Defendant thus properly sustained three separate convictions under that statute. . . ." (*Id.* at p. 334, fn. omitted.)

The court also held that section 654 did not preclude imposition of consecutive sentence on two of the convictions. (*People* v. *Harrison, supra,* 48 Cal.3d at pp. 334-338.) Calling *Perez* "the touchstone in determining how these general principles are to be applied to sex offenses" (*id.* at p. 336), the court rejected defendant's attempt to distinguish his case because "his three sex acts were part of a continuous 'violent' transaction" and were "wholly identical sex offenses . . . committed in sequence." (*Ibid.*).

The court reasoned "no special treatment is to be afforded to a defendant under section 654 simply because he chose to repeat, rather than to diversify or alternate, his many crimes. [Citations.]" (*People* v. *Harrison, supra,* 48 Cal.3d at p. 337.) In essence, the court rejected the defendant's attempt to subsume his crimes under one criminal intent—"to achieve sexual gratification by forcibly penetrating the victim's vagina with his finger." (*Id.* at p. 336.) "[I]t is defendant's intent to commit a number of separate base criminal acts upon his victim, and not the precise code section under which

he is thereafter convicted, which renders section 654 inapplicable." (*Id.* at pp. 337-338.)

## SECTION 288: DEFINED AND UNDEFINED LEWD ACTS

Section 288, subdivision (a) applies to "[a]ny person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child, . . . ."

■ As noted in *People* v. *Bothuel* (1988) 205 Cal.App.3d 581, 590 [252 Cal.Rptr. 596]:

"Conceptually it is helpful to distinguish two categories of acts which can serve as the basis for a section 288 charge. First, subdivision (a) specifically provides that acts constituting separate crimes punishable under other sections may also be charged as violations of section 288. Thus, acts of unlawful sexual intercourse ([§] 261.5), sodomy ([§] 286, oral copulation ([§] 288a) and penetration by object ([§] 289) accomplished with a minor under the age of 14 will support a conviction under section 288. In addition, various other forms of touching and fondling are also actionable under section 288. This latter category has sometimes been referred to as 'undefined lewd acts.' [Citation.]"

The cases reveal seemingly endless permutations of defined and undefined lewd acts committed in a single course of conduct.

Some cases involve only defined acts, which, in turn, may result in multiple section 288 convictions, multiple other section convictions, or a combination. (E.g., *People* v. *Slobodion* (1948) 31 Cal.2d 555, 562-563 [191 P.2d 1] [defendant convicted of one count of lewd conduct under § 288 involving "acts that could be considered rape or attempted rape" and one count under § 288a; separate acts committed within "relatively short time"]; *People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1446-1451 [278 Cal.Rptr. 452] [defendant convicted of two counts under § 288a and two counts under § 288; all counts based on acts constituting forcible oral copulation].)

Other cases involve only undefined acts, which, in turn, may result in one or more section 288 convictions. (E.g., *People* v. *Bevan* (1989) 208 Cal.App.3d 393, 399 [256 Cal.Rptr. 233] [two of three undefined § 288,

subd. (a), convictions reversed; impermissible fragmentation of a single criminal act into separate offenses].)

A third category of cases combines defined acts with undefined acts. (*People* v. *Blevins* (1984) 158 Cal.App.3d 64, 71-72 [204 Cal.Rptr. 124] [separate punishment under § 288, subd. (b), for kissing minor on face and breasts after removing her clothing, but prior to rape and oral copulation upheld; lewd conduct "distinct" from other sex offenses]; *People* v. *Bothuel*, *supra*, 205 Cal.App.3d 581, 589-592 [separate punishment for two undefined lewd acts derived from conduct consisting of "marriage-type" kissing, touching of minor victim's vaginal area and breasts by her father with his penis and directing victim to touch his penis (*id.* at p. 590, fn. 9) was prohibited because "the record [was] simply insufficient to support a finding the undefined acts were not incidental" to the oral copulation conviction (*id.* at p. 592, fn. 12)]; *People* v. *Kirk* (1990) 217 Cal.App.3d 1488, 1496 [267 Cal.Rptr. 126] [separate punishment for three undefined lewd acts precluded; it was "too likely" the acts were incidental to consensual intercourse with minor]; *People* v. *Bright* (1991) 227 Cal.App.3d 105, 109-110 [277 Cal.Rptr. 612] [separate conviction and punishment on 30 § 288, subd. (a), counts, involving defined and undefined lewd acts, upheld; none of the lewd acts were "preparatory to or necessarily associated with any other charged act."].)

The undefined act surfaces in two main settings: multiple conviction and multiple punishment. Thus, in *People* v. *Bevan*, *supra*, 208 Cal.App.3d 393, the defendant was convicted of three counts of violating section 288, based on a single episode of conduct that included kissing the victim, touching her breasts, and putting her hand on his penis. The court held that "a single crime has been fragmented into multiple offenses, that such proliferation of a single criminal act into multiple offenses is impermissible, and that the conviction as well as the punishment for the two duplicate crimes must fall. [Citations.]" (*Id.* at p. 399.) The underlying rationale of *Bevan* is the idea "that fragmenting a single, brief course of lewd and lascivious conduct into separate offenses could lead to absurd results. As the offender moved his hands over various parts of the child's body, such as the neck, breasts, ears, lips, toes, thighs, etc., theoretically each touch could result in a separate charge, resulting in dozens of charges from a momentary single contact with the minor. . . ." (*Id.* at p. 403.)

## THE UNDEFINED LEWD ACT INTERFACES WITH SECTION 654

The instant case involves the other main problem area: the interface between sections 654 and 288, when the defendant commits defined and undefined lewd acts in a single course of conduct. Here, the cases diverge.

In *People* v. *Kirk, supra,* 217 Cal.App.3d 1488, in one incident the defendant touched the victim's breasts through her clothing (count I), "french-kissed" her (count II), forced her onto a couch, and removed all her clothing and his own clothing. During the undressing he placed his mouth on her breasts (count III), and engaged her in unlawful sexual intercourse (count IV, also charged under § 288, subd. (a)) and other sex offenses. (*Id.* at p. 1491, 1493.) The court held that section 654 precluded separate punishment for the first three counts based on undefined lewd acts (§ 288, subd. (a)). Citing *Bothuel* and factually distinguishing *Slobodion,* the court reasoned "[it] is too likely that the undefined lewd acts will regularly occur when consensual sexual intercourse takes place. Punishment of each of such acts which are incidental to consensual sexual intercourse would lead to the absurd results discussed in *Bevan.*" (*Id.* at p. 1496.)

In *People* v. *Bright, supra,* 227 Cal.App.3d 105, in five different incidents, the defendant committed multiple sexual acts, defined and undefined, on his victim. The court rejected "the [*Bevan/Kirk*] analytic straitjacket of categorizing sexual offenses as 'defined' or 'undefined' " (*id.* at p. 109), purported to follow *People* v. *Harrison, supra,* 48 Cal.3d at page 321 (which involved separate punishment for rapid, identical, *defined* sex acts), and held that multiple convictions and punishment were proper. "Although all the acts occurred during separate episodes, such as in the tub, in the bed and on a sofa, the record clearly shows they were separate acts and not preparatory to or necessarily associated with any other charged act. . . ." (*Id.* at pp. 109-110.)

THE INSTANT CASE

FACTS

Madera was an acquaintance of Josh's sister, and occasionally visited Josh's home. Construing the evidence in the light most favorable to the prosecution, when Josh was in third grade (Sept. 1, 1987-June 15, 1988), he was awakened in his bedroom one night by Madera, who had his hand inside Josh's shorts. He was rubbing Josh's penis. Madera put his mouth on Josh's penis and Josh then orally copulated Madera, at Madera's direction. Finally, Madera put lotion he had brought into the room on his (Madera's) penis and placed it in Josh's butt.

During the summer of 1988, between third and fourth grade, Madera awakened Josh one night and led him to a camper parked a few doors away. Madera touched Josh's penis, orally copulated Josh and sodomized him.

While Josh was in fourth grade (Sept. 1, 1988-Sept. 15, 1989), on several occasions, Madera awakened him during the night and rubbed his penis, orally copulated Josh and forced Josh to orally copulate him. Occasionally Madera would sodomize him. These acts either occurred in Josh's bedroom or the living room.

Josh testified that about a week before Halloween in 1989 (Oct. 23, 1989-Oct. 27, 1989) he was awakened one night by Madera, who was rubbing Josh's penis. Madera had pulled down Josh's shorts to around his ankles. Madera asked Josh if it felt good; Josh did not reply. Josh pushed Madera's hand away, cuddled under the covers and refused to allow Madera to get his hands under the covers. Madera finally left.

## DISCUSSION

Unlike *Bevan*, the instant case does not involve fragmentation of undefined acts into multiple section 288, subdivision (a) convictions. As to each incident or series of incidents prior to Halloween of 1989, Madera was convicted of only one section 288 violation. The case does involve one undefined lewd act (touching or rubbing Josh's penis) committed in the same course of conduct as one or more defined code violations (oral copulation and/or sodomy). *People v. Harrison, supra,* 48 Cal.3d 321, involving multiple defined or distinct lewd acts under section 289, does not address this situation. The main significance of *Harrison* is that it reaffirms *People v. Perez, supra,* 23 Cal.3d 545 as "the touchstone." (*People v. Harrison, supra,* 48 Cal.3d at p. 336.)

The question boils down to Madera's intent, i.e., whether his touching of Josh's penis was to commit a separate base criminal act or to facilitate the oral copulations and sodomies that shortly followed. *People v. Kirk, supra,* 217 Cal.App.3d 1488 answers this question with a policy rule based on its assessment of probabilities: "It is *too likely* that the undefined lewd acts will *regularly* occur when consensual sexual intercourse takes place. Punishment of each of such acts which are incidental to consensual sexual intercourse would lead to the absurd results discussed in *Bevan*." (*Id.* at p. 1496; italics added.)

Another approach appears in *People v. Bothuel, supra,* 205 Cal.App.3d 581: "Just as in the case with two or more defined acts of the same character, an undefined act is not incidental to a defined act where it is separated from a defined act by an appreciable period of time during which the defendant ceased the assaultive conduct and had a reasonable opportunity to reflect on

his behavior before committing another lewd act. [Citation.] . . ." (*Id.* at p. 592, fn. 11.) The problem with this otherwise workable test is that it derives from *People v. Hammon* (1987) 191 Cal.App.3d 1084, 1098-1099 [236 Cal.Rptr. 822], which *Harrison* disapproved "to the extent it conflicts with our analysis here." (*People v. Harrison, supra,* 48 Cal.3d at p. 334.) Although *Harrison* disapproved *Hammon* in the context of its analysis of multiple convictions, *Hammon* also appears fundamentally at odds with *Harrison*'s multiple punishment rationale: "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] . . ." (*Id.* at p. 335.)

In the instant case, according to Josh, every incident or series of incidents involved one undefined lewd touching, but not all incidents involved sodomy or oral copulation. The rubbing of Josh's penis was frequently the method Madera used to awaken the child. The fact that the touching or rubbing of Josh's penis preceded the oral copulation and/or sodomy, on the occasions when such additional violations occurred, does not establish that the touching of Josh's penis was merely incidental to or facilitative of the later acts. Certainly the acts denounced by sections 288a and 286 are capable of commission without an initial touching or rubbing of the victim's penis.

In our view, section 654 applies where the undefined sex act directly facilitates or is merely incidental to the commission of a defined lewd act. (*People v. Perez, supra,* 23 Cal.3d at pp. 553-554.) For example, section 654 would bar separate punishment for applying lubricant to the area to be copulated. In such a situation, the commission of the undefined act would have directly facilitated the commission of the defined act. In contrast, section 654 does not apply where, as here, the undefined act is "preparatory" only in the general sense that it may be intended to sexually arouse either the perpetrator or the victim.

Otherwise stated, the probability that an undefined sex act may occur in the same transaction as a defined sex act does not render it "incidental," nor does it insulate the undefined sex act from separate punishment. The distinction for punishment purposes between undefined acts designed generally to arouse and those intended directly to facilitate defined sex acts recognizes the relatively greater culpability of the defendant who commits the former. The reason for the distinction is readily evident. The undefined act is a separate insult to the body—and the spirit—of an unwilling victim or a victim who is statutorily protected by law because of his or her minority, or both. The culpability of the perpetrator is not diminished by the fact the intrusion is "undefined" in the law.

Because the instant case involves only one undefined sex act per transaction, we need not decide whether multiple undefined sex acts, uninterrupted by a defined sex act, are separately punishable vis-à-vis each other.

## DISPOSITION

The judgment is affirmed.

Vartabedian, J., and Thaxter, J., concurred.

A petition for a rehearing was denied July 9, 1991, and appellant's petition for review by the Supreme Court was denied September 19, 1991.